HUDGINS et al. v. INTERNATIONAL & G. N. RY. CO. et al.

(Court of Civil Appeals of Texas. Galveston. Jan. 7, 1914.)

RAILROADS (§ 194*)—FORECLOSURE—LIABILITY OF PURCHASER.

The Carmack amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. Supp. 1911, p. 1307]) provides that an initial carrier of an interstate shipment shall be liable to the holder of the bill of lading for any injury in transit, but with a right of recourse to the carrier actually causing the damage. After damages had occurred on the line of a connecting carrier, the initial carrier was sold in foreclosure to defendant free of all debts except certain prior mortgages. Rev. St. 1911, art. 6625, provides that in case of any sale of the property and franchises of a railroad company, the purchaser shall be subject to the payment of all subsisting liabilities and claims for loss of and damage to property sustained in the operation of the railroad by its predecessor. *Held,* that the state statute referred only to loss of and damage to property directly caused by or sustained in the physical operation of the railroad, and did not include the predecessor's liability as such initial carrier.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 643–655; Dec. Dig. § 194.*]

Appeal from District Court, Brazoria County; Samuel J. Styles, Judge.

Action by S. H. Hudgins and another against the International & Great Northern Railway Company and T. J. Freeman, receiver thereof. Dismissed as to the receiver and judgment for defendant International & Great Northern Railroad Company, and plaintiffs appeal. Affirmed.

Masterson & Rucks, of Angleton, for appellants. Wilson, Dabney & King, of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellants, S. H. Hudgins and William Blair, on July 5, 1911, against the International & Great Northern Railroad Company and T. J. Freeman, receiver of said company, to recover damages sustained by 130 head of cattle owned by appellants and shipped by them from Sandy Point, a station on said railroad in Brazoria county, Tex., to the town of Manford in the state of Oklahoma. The shipment was over the road of the International & Great Northern Railroad Company, which was then being operated by T. J. Freeman, receiver, under appointment of the United States Circuit Court for the Northern District of Texas, to Ft. Worth, Tex., and thence over the lines of connecting carriers to Manford, Okl. On August 20, 1912, the plaintiffs filed an amended petition by which the appellee was made a party defendant, and which, in addition to the allegations of the original petition, alleges, in substance, that since the filing of the original petition the property and franchises of the International & Great Northern Railroad Company had been sold under order of the court in which said receivership had been granted, and that the purchasers of said property and franchises had incorporated themselves under the name of International & Great Northern Railway Company, and said last-named company now owns and operates said railroad, and by reason of its said purchase and ownership of the property and franchises of said International & Great Northern Railroad Company is responsible to plaintiffs, under the provisions of article 6625 of the Revised Civil Statutes 1911, for the damages to their said shipment of cattle. The appellee answered by general demurrer and general denial and by special plea, in which it is averred that by the contract of shipment it was expressly agreed and stipulated that in consideration of a reduced rate of freight the carrier, T. J. Freeman, receiver, would not be held liable for any damages to said shipment after it was delivered to the connecting carrier, and that no damage was sustained by said cattle on the line of said initial carrier, but said cattle were promptly and safely transported to Ft. Worth, the end of the line of the initial carrier, and there delivered to the connecting carrier in

good condition. The receiver, T. J. Freeman, filed plea in abatement, which was sustained by the trial court and the suit against him dismissed. The evidence introduced by plaintiffs shows that their cattle were injured by the negligent manner in which they were transported and reached their destination at Manford, Okl., in a damaged condition, but the undisputed evidence shows that none of this damage occurred on the line of appellee company, but was caused by the negligence of the connecting carriers. The shipment was made under a through bill of lading from Sandy Point in Brazoria county, Tex., to Manford, Okl. The property and franchises of the International & Great Northern Railroad Company were, by the judgment of foreclosure under which appellee purchased, sold free of all debts of said road save certain prior mortgages which were not foreclosed. Upon these facts the trial court instructed the jury to return a verdict in favor of the appellee.

The only question presented by this appeal is whether under article 6625 of the Revised Statutes of this state the purchaser of a sold-out railroad takes the property and franchises of such railroad charged with liability for damages to property not directly sustained in or caused by the operation of the physical property of the sold-out railroad. This article of the statute contains the following language: "In case of any sale heretofore or hereafter made of the property and franchises of a railroad company within this state, the purchaser or purchasers thereof and associates, if any, shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the road so purchased, as if such road were the road intended to be constructed by the corporation; and, when such charter has been filed, the new corporation shall have the powers and privileges then conferred by the laws of this state upon chartered railroads, including the power to construct and extend; provided, that, notwithstanding such incorporation, the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims for death and personal injuries sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for the current expenses of such operation," etc. This being a through shipment from a point in this state to a point in the state of Oklahoma, the property having been accepted by the receiver for such shipment and a through bill of lading issued therefor, the receiver was liable under the Carmack amendment to the Interstate Commerce Act for all loss or damages to the property caused by the connecting carrier. U. S. Comp. St. Supp. 1911, p. 1307. This amendment provides: "That any common carrier," etc., "receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damages, or injury to such property caused by it or by any common carrier," etc., "to which such property may be delivered or over whose line or lines such property may pass," etc.

"That the common carrier," etc., "issuing such receipt or bill of lading shall be entitled to recover from the common carrier," etc., "on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

Appellee concedes that upon the facts of this case the attempt of the receiver in his contract of shipment to limit the liability to damages sustained on his own line was void, and that, notwithstanding the clause in the contract so limiting his liability, he was liable under the act above quoted for the damage caused by his connecting carriers. This liability of the receiver, however, is not a charge upon the property purchased by appellant unless it is made so by the statute of this state before quoted. We do not think the statute was intended to embrace an indirect or constructive liability of this kind. The clause "all subsisting liabilities and claims for death and personal injuries sustained in the operation of the railroad" necessarily refers only to the physical operation of the road, and we think the succeeding clause, "and for loss of and damage to property sustained in the operation of the railroad" has the same meaning and refers only to loss of and damage to property directly caused by or sustained in the physical operation of the railroad, and does not embrace a liability not directly connected with such operation. In making the purchaser under a foreclosure sale responsible for debts of the mortgagor not secured by any lien on the property, and not incurred for the benefit of the property, the act in question violates heretofore well-settled principles of the law, and we are not disposed to construe the act so as to place upon such purchaser any liability not clearly created by the language of the act.

We are of opinion that the judgment of the court below should be affirmed and it is so ordered.

Affirmed.